```
01
02
03
04
```

05              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
06                       AT SEATTLE

07  JEFFREY E. BAKER,              )   CASE NO. C05-2105-JLR
                                   )
08           Plaintiff,             )
                                   )
09      v.                          )
                                   )   REPORT AND RECOMMENDATION
10  JO ANNE B. BARNHART, Commissioner )   RE: SOCIAL SECURITY
    of Social Security,             )   DISABILITY APPEAL
11                                  )
             Defendant.             )
12  _____)

13      Plaintiff Jeffrey E. Baker proceeds through counsel in his appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner). The Commissioner denied

15  plaintiff's application for Supplemental Security Income (SSI) benefits and Disability Insurance

16  (DI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the

17  ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended

18  that this matter be REMANDED for an award of benefits.

19                      **FACTS AND PROCEDURAL HISTORY**

20      Plaintiff was born on XXXX, 1961.[1] He completed high school, taking special education

21  _____

22      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 classes. Testing conducted in 2000 found plaintiff read and spelled at the fifth-grade level and did
02 arithmetic at the eighth-grade level. (AR 258-63.) Also, in or around the year 2000, plaintiff
03 failed a basic English class at a Community college. (AR 24-25.) Plaintiff previously worked as
04 a safety inspector, warehouseman, bakery line worker, community cleaner, self-serve gas
05 attendant, tow truck driver, pin setter, and sales clerk.

06 Plaintiff filed applications for SSI and DI in May 1999, alleging disability since July 1,
07 1998. (AR 112-14, 419-21.)[2] Plaintiff alleged back and hand problems, hepatitis, anxiety, and
08 depression. His applications were denied initially and on reconsideration, and he timely requested
09 a hearing. On May 23, 2001, ALJ Steven D. Slahta held a hearing, taking testimony from plaintiff,
10 his father, Don Baker, and vocational expert Paul Tomita. (AR 45-100.) On July 24, 2001, ALJ
11 Slahta issued a decision finding plaintiff not disabled. (AR 16-31.)

12 Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on
13 January 3, 2003, making the ALJ's decision the final decision of the Commissioner. (AR 4-5.)
14 Plaintiff appealed this final decision of the Commissioner to this Court.

15 On April 19, 2004, this Court remanded the case for further administrative proceedings.
16 (AR 906-17.) *See also Baker v. Barnhart*, No. C03-272-RSL-RSM (W.D. Wash.). Then
17 Magistrate Judge Ricardo S. Martinez determined that ALJ Slahta improperly discredited the
18 opinions of treating physician Robert Crittenden, M.D., improperly rejected plaintiff's testimony,
19 and failed to pose an inclusive hypothetical to the vocational expert. (AR 906-15.) The Appeals

---

official policy on privacy adopted by the Judicial Conference of the United States.

[2] The parties cite and the record indicates other dates for plaintiff's applications. However, the May 1999 date is relied on as reflected in the applications cited above.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 Council remanded plaintiff's claims to an ALJ. (AR 918-19.)

02 While appealing the decision regarding his initial applications, plaintiff filed a new
03 application for benefits on November 15, 2002. (AR 481-82.) Plaintiff is insured for DI benefits
04 through March 31, 2003. (AR 483.) This application was also denied initially and on
05 reconsideration, and plaintiff timely requested a hearing.

06 On December 14, 2004, ALJ M.J. Adams held a hearing, taking testimony from plaintiff
07 and vocational expert Michael Swanson. (AR 938-1018.) In a February 7, 2005 decision, ALJ
08 Adams found plaintiff not disabled. (AR 442-55.) This decision consolidated plaintiff's 1999 and
09 2002 applications for benefits. (AR 442.)

10 Plaintiff appealed and the Appeals Council again denied his request for review, making the
11 ALJ's 2005 decision the final decision of the Commissioner. (AR 432-34.) Plaintiff appealed this
12 final decision of the Commissioner to this Court.

13 **JURISDICTION**

14 The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15 **DISCUSSION**

16 The Commissioner follows a five-step sequential evaluation process for determining
17 whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must
18 be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not
19 engaged in substantial gainful activity during the period at issue. At step two, it must be
20 determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's
21 degenerative disc disease, chronic liver disease, affective disorder, and personality disorder severe.
22 Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

found that plaintiff's impairments did not meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess RFC and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff's RFC and found him unable to perform his past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found plaintiff capable of making an adjustment to work existing in significant numbers in the national economy, including work as a garment sorter, machine packager, and fast food worker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff raises numerous arguments regarding a restriction on handling or fingering, Dr. Crittenden's opinions, his mental conditions, the credibility assessment, his educational level, and step three. He argues that he is clearly disabled based on the existing record and that this case should be remanded for an award of benefits, or, alternatively, that benefits should be awarded at least through the date of ALJ Slahta's decision and this matter re-adjudicated for the period

01  beginning after that date. Plaintiff alternatively seeks, at a minimum, remand for further

02  administrative proceedings for the entire time period in question. The Commissioner argues that

03  the ALJ's decision is supported by substantial evidence and should be affirmed.

04  The Court has discretion to remand for further proceedings or to award benefits. *See*

05  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits

06  where "the record has been fully developed and further administrative proceedings would serve

07  no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

11  *Id*. at 1076-77. For the reasons described below, the Court recommends that this matter be

12  remanded for an award of benefits.

### Restriction on Handling or Fingering

14  As indicated above and discussed further below, this Court found that ALJ Slahta

15  erroneously rejected the opinions of Dr. Crittenden and concluded that this treating physician's

16  opinions should be credited as true. (*See* AR 909-12.) Thereafter, acknowledging the limitations

17  identified by Dr. Crittenden, the Court stated: "[N]owhere [in the ALJ's hypothetical to the

18  vocational expert] were the loss of motor control and feeling in plaintiff's hands, particularly his

19  left hand, addressed. This limitation could interfere significantly with plaintiff's ability to perform

20  the work of assembler as identified by the vocational expert." (AR 914.) The Court found

21  remand appropriate given that the vocational expert failed to address plaintiff's actual limitations

22  due to improperly discredited evidence. (*Id*.) In conclusion the Court stated:

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  >Here, there are outstanding issues at step five of the sequential process; once Dr.
02  >Crittenden's opinion and plaintiff's testimony are properly credited, the vocational expert has additional vocational factors to consider. Without the vocational expert's testimony with respect to plaintiff's limitations, it cannot be said that it is clear that
03  >the ALJ would be required to find plaintiff disabled.

04 (AR 915.)

05 Plaintiff argues that ALJ Adams violated this Court's remand order by failing to include
06 a restriction on handling or fingering in the RFC or hypothetical to the vocational expert. Pointing
07 to testimony in response to a hypothetical which included a restriction to occasional fine
08 manipulation/fingering, plaintiff asserts that there was no vocational expert testimony that would
09 render this error harmless. He further asserts that he could not perform the jobs identified given
10 his limited motor functioning. In response, the Commissioner asserts that the ALJ included
11 plaintiff's credible limitations – including his handling and fingering limitations – in the
12 hypothetical to the ALJ and that the vocational expert identified three jobs – garment sorter,
13 machine packager, and fast food worker – that plaintiff could perform.

14 The Commissioner's position is not well taken. As noted by plaintiff, ALJ Adams found
15 plaintiff capable of "handling (gross manipulation) and fingering (fine manipulations)[.]" (AR 450,
16 454.) The ALJ's first, second, and fourth hypotheticals to the vocational expert did not include
17 any handling or fingering limitations. (*See* AR 981-84, 996.) In response to the fourth
18 hypothetical, the vocational expert identified the jobs reflected in the ALJ's step five decision and
19 pointed to by the Commissioner here – garment sorter, machine packager, and fast food worker.
20 (*See* AR 453-54, 995-96.) As such, plaintiff correctly asserts that neither the ALJ's RFC, nor the
21 hypothetical to the vocational expert relied on by the ALJ at step five included any limitation on
22 handling or fingering. This omission was in direct contradiction to the order from this Court

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

finding that Dr. Crittenden's opinions should be credited as true.

Plaintiff also correctly asserts an absence of vocational expert testimony to render this error harmless. In his third hypothetical to the vocational expert, the ALJ added a limitation of "[o]ccasional fingering or fine manipulation and handling or gross manipulation unlimited[.]" (AR 985-86.) The vocational expert identified several positions in response to this hypothetical, but all positions were subsequently eliminated from consideration. (*See* AR 986-87 (hand packaging position eliminated due to occasional fingering limitation), AR 1006-1007 (ticket seller position eliminated due to occasional fingering/fine manipulation limitation), and AR 1006-1009 (vocational expert conceded his departure from the Dictionary of Occupational Titles in identifying an information clerk position and based his departure on job analyses completed more than five years prior to his testimony; plaintiff's counsel indicated such analyses would have to be a part of the record, but the ALJ stated: "Well, why don't we just eliminate that altogether? That will solve the problem.")) Moreover, in response to questioning from counsel, the vocational expert testified that an individual with motor coordination and fine finger dexterity "in the lowest third quarter of the population, exclusive of the bottom 10 percent of the population[]" might be able to get hired as a garment sorter, machine packager, or fast food worker, but would not be able to sustain the employment. (AR 1011.) Accordingly, there is no testimony from a vocational expert supporting plaintiff's ability to work with a limitation on handling or fingering.

A hypothetical posed to a vocational expert must include all of the claimant's functional limitations supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)). A vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the

national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). Here, the ALJ erred in relying on testimony given in response to a hypothetical which failed to include all of plaintiff's functional limitations supported by the record.

Plaintiff alternatively argues that, assuming medical improvement in his handling/fingering abilities at some point after ALJ Slahta's decision, ALJ Adams should not have made a unitary RFC finding for the entire period at issue. He asserts that, instead, the Court should at least find him disabled through the date of ALJ Slahta's decision – July 24, 2001, and remand for further proceedings for the period after that date. The Commissioner does not directly respond to this argument as it relates to plaintiff's fingering/handling abilities. However, the Commissioner does generally argue, as discussed below, that plaintiff has shown significant improvement since ALJ Slahta's decision and that medical and testimonial evidence suggest that his alleged disabling impairments would be limited to, at most, a closed period of time. The Commissioner does not point to any specific evidence in the record in support of this claim.

One significant piece of evidence supports the Commissioner's argument as to improvement and particularly relates to plaintiff's hand/fingering-related issues. In a December 2004 declaration, Dr. Crittenden stated that by the fall of 2003, following injections of some sort, "the problem with [plaintiff's] hands . . . significantly improved." (AR 874.) He later referenced "the numbness in [plaintiff's] hands he had until 2003." (AR 877.) As alternatively suggested by the parties, this evidence arguably supports a remand for only a closed period of benefits, at least through July 24, 2001. However, as discussed below, other errors by the ALJ warrant a remand for an award of benefits for the entire time period in question.

Physicians' Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

Plaintiff asserts that the ALJ violated this Court's remand order holding that Dr. Crittenden's opinions should be credited as true. Plaintiff further argues that the ALJ failed to give clear and convincing reasons for rejecting this treating physician's opinions. The Commissioner avers that the ALJ appropriately gave little weight to Dr. Crittenden's opinions and more weight to the opinions of state agency examining physicians Drs. Marie Ho and Michele Dang.

Again, the Commissioner's argument fails. First, as indicated above, this Court previously found that Dr. Crittenden's opinions should be credited as true. (AR 909-12.) Yet, despite the Appeals Council's directive to conduct "further proceedings consistent with the order of the court[]" (AR 918), and ALJ Adams's acknowledgment that this Court "remanded the case for

further proceedings at step five of the sequential evaluation[]" (AR 442), he proceeded as if the Court's finding as to Dr. Crittenden had never been made and assessed this treating physician's opinions, as well as all of the preceding steps of the five step analysis, anew. The Commissioner does not directly address this issue and the undersigned finds no basis for the ALJ's departure from this Court's remand order. *See Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1213-19 (C.D. Cal. 2005) (ALJ found plaintiff not disabled at step four despite the fact that the district court's remand order directed him only to reassess plaintiff's claim at step five; applying the doctrine of the law of the case and the rule of mandate to find that the ALJ abused his discretion by disregarding that Court's earlier orders and remand instructions); *Ruiz v. Apfel*, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998) (finding no basis for ALJ to review issues previously determined in plaintiff's favor).[3]

The Commissioner may indirectly acknowledge this issue by alternatively submitting that plaintiff has shown significant improvement since ALJ Slahta's decision and that medical and testimonial evidence suggest that his alleged disabling impairments would be limited to, at most, a closed period of time. However, this submission of significant improvement is wholly conclusory, lacking any reference to specific evidence in the record. As indicated above, Dr. Crittenden's December 2004 declaration does support the existence of significant improvement in relation to plaintiff's hand/finger-related issues. The declaration also attests to improvement

---

[3] It should be noted that regulations governing the remand of cases by a federal court state that, on remand, "[a]ny issues relating to [plaintiff's] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in [his] case." 20 C.F.R. §§ 404.983, 416.1482. However, these regulations do not speak to the current case, in which a federal court specifically directed an ALJ to credit testimony and to proceed to a specific step in the sequential evaluation process.

in plaintiff's headaches and other neck-related issues by the fall of 2003. (AR 874.) There is also some suggestion in the declaration, as discussed further below, as to improvement with respect to anxiety and depression. (AR 875-76.)

Although the Commissioner does not make the argument, it could be said that ALJ Adams in effect limited his assessment to the period after ALJ Slahta's decision. In fact, noting ALJ Slahta's decision "provided a detailed summary of the evidence at that time[,]" ALJ Adams focuses exclusively "on the evidence submitted after the ALJ decision issued in July 2001." (AR 444.) This evidence included the December 2004 declaration from Dr. Crittenden. *See* AR 448, 450-51.) However, it is troubling that ALJ Adams did not explicitly differentiate between the two different time periods – before and after ALJ Slahta's July 2001 decision – in rendering his findings.[4] He simply addressed the evidence dated after July 2001 and made a decision as to the entire time period under consideration.

Nor is the undersigned convinced as to the sufficiency of the ALJ's assessment of Dr. Crittenden's December 2004 declaration. The ALJ stated as follows:

> In Dr. Crittenden's December 2004 declaration, the claimant's representative asked Dr. Crittenden whether the combination of the claimant's alleged medical problems made the claimant able, at any time during his treatment of the claimant capable of engaging in "a full-time job where [the claimant] had to either sit, or sit and stand, eight hours per day, or stand and walk six hours per day, five days per week, 50 days per year?" Dr. Crittenden responded, "My answer until October 2004 would have been no. At that time, he started interferon which can cause serious side effects, which we don't know if he'll have. If he does have these side effects, then I do not believe he could work with them." This answer is internally inconsistent in that first Dr. Crittenden answered that the claimant could not work, but then indicated that

---

[4] Also, although plaintiff had filed another application for benefits, the ALJ did not differentiate between the applications or applicable time periods and, instead, consolidated the applications for consideration. (AR 442.)

whether the claimant would be able to work depended on side effects of interferon treatment. If Dr. Crittenden sincerely meant that the claimant was not able to work, further side effects would not change the claimant's inability to work. Due to this inherent inconsistency in Dr. Crittenden's response, I assign this opinion little weight.

Dr. Crittenden also criticized the opinion of consultative physical examiner, Dr. Ho, stating she only addressed the claimant's back complaints, failing to address the claimant's allegations of headaches, neck problems, obesity, and hand numbness, alleged until 2003. This is an ungrounded criticism. Dr. Ho's evaluation occurred in January 2003, and the claimant did not mention neck pain, obesity, and hand numbness; however, despite no complaints, Dr. Ho included examination of the claimant's neck, cranial nerves, and upper extremities in her evaluation, noted a past cervical fusion, and reported the claimant's weight at 260 pounds. After her thorough examination, Dr. Ho concluded that the claimant had no restrictions regarding standing, walking, sitting, or bending; that he would be capable of lifting 50 pounds occasionally and 20 pounds frequently; and no other postural or manipulative limitations. Thus, Dr. Crittenden's criticism of Dr. Ho's evaluation is ungrounded and his opinion is inconsistent with the record. Thus, I assign greater weight to the opinion of Dr. Ho.

Finally, despite opining in his declaration, taken in December 2004, that the claimant's depression was "fairly well controlled, and he is doing relatively well, with a pretty good mood and affect," in the same declaration, Dr. Crittenden alleged that the claimant could not tolerate the mental demands of work. To support this allegation, Dr. Crittenden opined that the claimant's weekly psychiatry appointments indicated concern for the claimant's stability and cited to an alleged "down spiraling anxiety and depression." Dr. Crittenden did not indicate that the frequency of the claimant's psychiatric appointments were at the claimant's own insistence, and that his psychiatrist had attempted, on multiple occasions, to meet with the claimant on a less frequent basis and to lower his does of BuSpar, however, the claimant had refused. Moreover, Dr. Crittenden's assessment of the claimant's mental state is inconsistent and contrary to the rest of the medical record. Dr. Crittenden initially opined that the claimant's depression was fairly well controlled, but later opined the claimant was unstable and referred to an alleged down spiraling anxiety and depression, which is contradictory. Dr. Crittenden's opinion that the claimant was incapable of the mental demands of work is inconsistent with psychological testing. During a consultative evaluation performed by Dr. Dang, the claimant demonstrated that he was able to perform simple and repetitive tasks, was able to accept simple instruction, and interact in a manner which was pleasant. While Dr. Dang also opined that the claimant would be limited in his ability to perform detailed or complex tasks and that he was somewhat limited regarding his ability to express himself, Dr. Dang concluded that the claimant's psychiatric symptoms only "mildly" impacted his ability to maintain employment. For all these reasons, I give the opinion of Dr. Dang more weight that

01     the opinion of Dr. Crittenden, as reflected in the above stated residual functional capacity.

02

03 (AR 450-51 (internal citations to record omitted.))

04 As noted by plaintiff, although his language was a bit confusing, Dr. Crittenden arguably opined that he clearly found plaintiff unable to work until October 2004 and reserved opinion after that date given that it was unknown how he would respond to more recent treatment. (*See* AR 876 ("My answer until October 2004 would have been no.  At that time, he started interferon which can cause serious side effects, which we don't know if he'll have.  If he does have these side effects, then I do not believe he could work with them.")) The first "inconsistency" identified by the ALJ, therefore, is not a persuasive justification for discounting the opinions of Dr. Crittenden.

11 Nor does the undersigned find a critique of Dr. Crittenden's critique of the report of Dr. Ho particularly convincing as a justification to afford greater weight to the opinions of an examining physician over that of a treating physician.  Also, while Dr. Crittenden may have overstated his point in asserting that Dr. Ho "didn't consider" various problems, a full reading of his comments show that he was comparing Dr. Ho's focus on one particular problem over various other problems plaintiff was or had been experiencing:

> I think she did a reasonable work-up in the things she's saying there, but she focused primarily on his back.  I don't know why she focused on his back, basically everything there looked pretty normal.  She didn't consider his headaches, neck problems and the numbness in his hands he had until 2003.  And she did not diagnose or consider obesity, even though he weighed 260 pounds when she measured him.

20 (AR 877.)

21 Finally, the ALJ's final reasons for not crediting the 2004 declaration of Dr. Crittenden are not particularly convincing.  Dr. Crittenden candidly assessed plaintiff's depression and anxiety

as follows:

> At this time his depression is fairly well controlled, and he is doing relatively well, with a pretty good mood and affect. His anxiety on a scale of ten, with ten being very severe, gets up into the five to six range, but most of the time he's in the three to four range.

(AR 875.) However, he subsequently tempered those remarks by stating the following:

> . . . The question is what would happen if he were to go to work full-time. First, he required weekly psychiatric treatment, which would have necessitated missing work at least several hours per week alone, even without considering his other medical appointments. Second, when he gets himself in a situation where he has to do things he can't do very well, he gets very frustrated, and then he starts getting anxious and he starts getting depressed and things kind of wind downhill. So, in my opinion, up until the present, the mental demands of work would have been too much for him to tolerate, and if had tried to do so, the improvement in his functioning and abilities would have gone away.

(AR 876.) Even assuming plaintiff's weekly appointments and medication levels continued at his own insistence, Dr. Crittenden's other remarks are not contradictory. That is, Dr. Crittenden assessed plaintiff's condition at that time as fairly well controlled, but believed that a return to full time work would have caused his condition to deteriorate. Again, the ALJ's reasoning does not suffice to account for the acceptance of the opinions of an examining physician over the opinions of a treating physician.

Given all of the above, Dr. Crittenden's October 2004 declaration should be credited as true. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required); *Lester*, 81 F.3d at 830-34 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'"; finding that, if doctors'

opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). *But see Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (courts retain flexibility in applying this "'crediting as true' theory."; remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true); *Barbato v. Commissioner of SSA*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) ("In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant."; remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for rejecting a physician's opinion were legally insufficient). Because Dr. Crittenden asserts that plaintiff's depression and anxiety would have inhibited his ability to work full time, crediting his opinions supports an award of benefits for the entire time period under consideration. (*See* AR 876.)[5]

### Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

---

[5] Plaintiff raises a series of other arguments regarding the ALJ's assessment of his mental conditions, including that the ALJ wrongfully rejected limitations identified by non-examining state-agency psychologists, was mistaken about the basic mental demands of work, failed to account for his borderline intellectual functioning, and failed to ask the vocational expert to assume a deficit in attention and concentration. (*See* Dkt. 15 at 15-18 and Dkt. 17 at 6-8.) Yet, given the above, it is not necessary to address these issues.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her

02  conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

03  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

04  ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

05  his testimony and his conduct, his daily activities, his work record, and testimony from physicians

06  and third parties concerning the nature, severity, and effect of the symptoms of which he

07  complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

08  　　　　Plaintiff first asserts that the ALJ failed to comply with this Court's previous remand order.

09  The Court found that ALJ Slahta improperly rejected plaintiff's testimony and that that testimony

10  should be credited as a matter of law. (*See* AR 914 ("Where the ALJ improperly rejects the

11  claimant's testimony regarding his limitations, and the claimant would be found disabled if his

12  testimony were credited, the court need not remand 'solely to allow the ALJ to make specific

13  findings regarding that testimony.' *Lester v. Chater*, 81 F.3d at 821.")) Again, the Commissioner

14  does not address this issue.

15  　　　　As stated above, the undersigned finds no basis for the ALJ's disregard of the remand

16  order from this Court. *See Ischay*, 383 F. Supp. 2d at 1213-19; *Ruiz*, 24 F. Supp. 2d at 1050.

17  The ALJ's failure to credit plaintiff's prior testimony, therefore, provides an additional basis for

18  an award of benefits.

19  　　　　Plaintiff next, and alternatively, argues that the ALJ should not have made a unitary

20  credibility finding for the entire time period under consideration. He maintains that ALJ Adams

21  erroneously found him not credible. The Commissioner argues that the ALJ properly rejected

22  plaintiff's subjective allegations.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01     The ALJ rendered the following credibility assessment:

02     [I] have considered the claimant's allegations and have found them not fully credible because they lack objective medical evidence to support his allegation that his impairments could reasonably cause the symptoms and limitations alleged. Specifically, despite the claimant's allegations of severe functional limitation, the claimant reported in June 2002 that he was using the gazelle exercising machine for half an hour every morning, and the claimant's treating physician consistently recommended the claimant get physically active. The claimant flew "back east" in September 2002. When the claimant was discharged from physical therapy in July 2004, the claimant reported his "back had never felt better," he was helping his mother with yard work, and he was planning a golf outing and white water rafting trip. These activities are inconsistent with the claimant's alleged limitations. Further, consultative examination findings did not support the claimant's allegations. Dr. Ho concluded that "although the claimant alleges severe back pain limits his ability to sit, stand, walk, or bend, the objective evidence does not support the claimant's allegations." She noted a normal gait and an "excellent" range of motion in his back. Further, she opined there were no medical records which support the claimant's allegations. Thus, the objective medical evidence also does not support the claimant's allegations of severe functional limitations.

(AR 450 (internal citations to record omitted.))

The ALJ's interpretation as to the inconsistencies in the record between plaintiff's testimony and his various activities appears rational. However, for the reasons stated above, the ALJ's reliance on the opinions of Dr. Ho was questionable. Also, as noted by plaintiff, while Dr. Crittenden did recommend increased activity, he also consistently opined that plaintiff was unable to work. These deficiencies call the ALJ's credibility assessment into question. Taken together with the ALJ's errors with respect to Dr. Crittenden, the ALJ's credibility assessment as a whole does not withstand scrutiny.

<u>Education</u>

Plaintiff argues that substantial evidence does not support ALJ Adams's finding that he had a high school education or his hypothetical assuming an individual with a high school education.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01 (*See* AR 454 and 980, 1001.)  Plaintiff posits that the numeric grade level of a claimant's

02 education is not conclusive evidence of educational achievement, pointing to 20 C.F.R. §

03 404.1564(b): "Therefore, the numerical grade level that you completed in high school may not

04 represent your actual educational abilities.  These may be higher or lower.  However, if there is

05 no other evidence to contradict it, we will use your numerical grade level to determine your

06 educational abilities."  Plaintiff asserts that testing results showing he read and spelled at the fifth-

07 grade level and did arithmetic at the eighth-grade level should be used instead of the numeric grade

08 level of his education.  ( *See* AR 258-63 (May 2000 report from Dr. Rodger I. Meinz, Ph.D.,

09 describing testing results and diagnosing plaintiff with a reading disorder and disorder of written

10 expression, both at the fifth grade level, as well as borderline verbal intellectual functioning.))

11 The Commissioner rejects plaintiff's argument, asserting that the record does not

12 demonstrate that his educational level or testing results would change his ability to perform simple

13 work.  Plaintiff describes this response as an inappropriate post hoc rationalization never

14 mentioned in the ALJ's decision.  Plaintiff further notes that the Commissioner bears the burden

15 at step five and asserts that, here, ALJ Adams neither obtained, nor cited any evidence that a

16 restriction to simple work accounted for a fifth-grade reading level and eighth-grade arithmetic

17 level.

18 Because he focused only on evidence post-dating the previous decision, ALJ Adams did

19 not review or discuss the May 2000 report relied on by plaintiff in support of this argument.  Nor

20 did the remand order from this Court – outside of acknowledging Dr. Meinz's testing results –

21 address any arguments pertaining to this issue.  (*See* AR 906 ("He has finished high school, but

22 suffers from learning disabilities; with a verbal IQ score of 72, he reads and spells at fifth grade

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

level, and does math at eighth grade level.""))  However, the previous ALJ's decision did acknowledge this issue, finding plaintiff's "reading disorder; disorder of written expression; [and] borderline verbal intellectual functioning, with a verbal IQ of 72, a performance IQ of 99, and a full scale IQ of 84[,]" severe at step two.  (AR 18, 30.)  Accordingly, the undersigned agrees with plaintiff that the ALJ erred in failing to address either Dr. Meinz's specific testing results or plaintiff's difficulties with respect to his intellectual functioning/educational level in general.

<u>Step Three</u>

Plaintiff argues that ALJ Adams should have considered his medical equivalence to Listing 12.05(C), mental retardation.  He notes that an individual may be found to meet this listing where they have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Listing 12.05(C).  Plaintiff asserts that ALJ Adams should have expressly considered his medical equivalence to this listing given that he – with an assessed verbal IQ score of 72 – nearly met the level 70 score required by listing 12.05(C), and because ALJ Adams found an additional and significant limitation other than limited intelligence by limiting him to light work.

The Commissioner states that plaintiff's argument that he "nearly" meets or equals Listing 12.05(c) is without merit.  The Commissioner asserts that the record does not demonstrate that plaintiff's mental limitations rise to the level of mental retardation.

On this point, the Commissioner is correct.  Medical equivalence to a listing "will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'"  *Marcia*, 900 F.2d at 175-76 (quoting 20 C.F.R. § 404.1526).  "Equivalence is determined on the basis of a comparison between the 'symptoms, signs and laboratory findings' about the claimant's

impairment as evidenced by the medical records 'with the medical criteria shown with the listed impairment.'" *Id*. Here, plaintiff points to evidence showing that he "nearly" met the criteria for Listing 12.05(C), rather than evidence establishing equivalence to that criteria. Accordingly, plaintiff fails to establish that the ALJ erred in failing to expressly consider Listing 12.05(C).

## **CONCLUSION**

For the reasons described above, this matter should be REMANDED for an award of benefits. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of August, 2006.

Mary Alice Theiler
United States Magistrate Judge